# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**CARLA BROWNLEE,**

    Plaintiff,                          Case No.
                                            Hon.

v.

**41-B DISTRICT COURT,**
**SEBASTIAN LUCIDO,** in his individual
capacity, **JAMES McGRAIL,** in his
individual capacity, **RYAN ZEMKE,** in
his individual capacity, and **DEBORAH**
**HERNANDEZ,** in her individual capacity.

    Defendants.

---

## COMPLAINT

*Plaintiff and Defendant 41-B District Court were previously parties to federal
litigation in this Court, Case No. 2:24-cv-11957 (E.D. Mich.).*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## I.    INTRODUCTION

1. Plaintiff brings this action to remedy race, gender, and disability

   discrimination, harassment, and retaliation during her employment with the

   41-B District Court.

2.  Plaintiff was qualified for her position as a probation officer but was
    subjected to unequal treatment, hostile work environment, denial of
    accommodations, retaliation for opposing discrimination, and termination.

3.  Plaintiff asserts claims under Title VII, 42 U.S.C. § 1983, the Rehabilitation
    Act, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and Michigan's
    Persons with Disabilities Civil Rights Act ("PWDCRA").

## II.    JURISDICTION AND VENUE

4.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

6.  Venue is proper under 28 U.S.C. § 1391 because the events giving rise to
    this action occurred in Macomb County, Michigan.

## III.   PARTIES

7.  Plaintiff is an African-American woman and former probation officer of the
    41-B District Court. She is also an individual with a disability under the
    Rehabilitation Act and PWDCRA.

8.  Defendant 41-B DISTRICT COURT is a state court located in Macomb
    County, Michigan, and was Plaintiff's employer.

2

9. Defendant SEBASTIAN LUCIDO at all relevant times was Chief Judge of the Court and is sued in his individual capacity under 42 U.S.C. § 1983, the ELCRA, and the PWDCRA.

10. Defendant JAMES MCGRAIL was Court Administrator and is sued in his individual capacity under 42 U.S.C. § 1983, the ELCRA, and the PWDCRA.

11. Defendant RYAN ZEMKE was Deputy Court Administrator/Magistrate and is sued in his individual capacity under 42 U.S.C. § 1983, the ELCRA, and the PWDCRA.

12. Defendant DEBORAH HERNANDEZ was a supervisor at the Court and is sued in her individual capacity under 42 U.S.C. § 1983, the ELCRA, and the PWDCRA.

## IV.    FACTUAL ALLEGATIONS

13. On or around March of 2020, Ms. Brownlee notified Judge Carrie Fuca and Defendant James McGrail, the court administrator, that there were issues concerning a specific probation file.

14. Specifically, that a white male probation officer, falsified one of the files.

15. Upon information and belief, he further deleted files, case notes, and probation recommendations from the CourtWork system.

16. Upon information and belief, the white male probation officer did not receive any discipline from Defendant McGrail.

17. Ms. Brownlee brought this issue to the attention of Chief Judge Sebestian Lucido in March of 2020.

18. Upon information and belief, nothing was done, despite Judge Fuca inquiring about the situation on multiple times.

19. On or about May 8, 2020, Ms. Brownlee was notified the rest of the staff were being laid off.

20. Upon information and belief, this layoff resulted primarily from the mismanagement of funds by Defendant 41-B District Court.

21. Ms. Brownlee and one other person in probation would be allowed to stay in probation with her only input being if the other person should be a clerk or probation officer.

22. No discussion was made as to what Ms. Brownlee needed to stay afloat given that the probation office had seven employees.

23. The probation officer who committed fraud was selected by Defendant to continue working in probation during the reduced staff period despite the falsification issues.

24. On August 12, 2020, Ms. Brownlee had a conversation with Defendant Jim McGrail about her not being notified about changes that affect her and the probation department

25. During this conversation, she expressed feelings of exclusion and disrespect by management towards her.

26. These actions by management caused the staff to follow suit.

27. On September 23, 2020, Defendant Ryan Zemke was putting files in "bench warrant status," without the files being in LEIN at the time.

28. Upon information and belief, nothing was done about his actions.

29. On or about May 26, 2022, the probation officer who committed fraud went to Defendant McGrail asking to go to a probation conference rather than go to Ms. Brownlee as he had done in years past.

30. The probation officer who committed fraud overrode the chain of command in an effort to undermine Ms. Brownlee's authority.

31. Further, he was set to retire soon and the conference was to develop employees in their roles handling probationary issues.

32. During the conference, this same probation officer only showed up to the parties, golf outings, or other such events, ignoring the conference sessions.

33. Ms. Brownlee brought this to the attention of Defendant McGrail.

34. This probation officer was essentially allowed to use the conference as a vacation and as a way to ignore the work on his desk until his retirement.

35. On or about August 9, 2022, there were no clerks in probation with Stefanie Goodman, who was helping with probation while handling criminal dockets and phone calls.

36. McGrail informed Ms. Brownlee that Goodman would be going back fully to the criminal department to "keep questions down."

37. Ms. Brownlee requested that Goodman be allowed to continue to assist as the workload of Ms. Brownlee kept increasing, but the request was ignored.

38. The next day, Brownlee met with Defendant McGrail and the criminal division about Defendant Zemke not doing his job; however, nothing was done.

39. Around December of 2022, Thomas Jury, a white male, was transferred to the probation department, despite numerous documented issues with his prior role in preparing the judge's criminal docket.

40. Ms. Brownlee voiced concerns about the transfer, as she stated it would not be a good fit due to the volume of work and the need to effectively multitask.

41. Again, Ms. Brownlee's concerns were ignored.

42. Around January or February of 2023, Jury was promoted to probation officer.

43. Ms. Brownlee was involved in the interview process and selected Jessica Malek due to her work history.

44. However, Defendant Lucido stated Jury's two months of probation experience placed him over Jessica Malek.

45. Defendant Lucido further mentioned Jury needed to be hired because of Judge Feminineo.

46. Jury and Jury's mother were former employees at Feminineo's law firm, with Jury having known issues regarding a housesitting incident for Judge Feminineo.

47. Defendant McGrail and Ms. Brownlee disagreed with the decision, voicing their concerns during the discussion.

48. While the discussion was occurring, Judge Feminineo came into the room and stated he would understand if Jury did not receive the position.

49. Jury did eventually receive the position, ignoring the concerns presented about his ability and qualifications.

50. Ms. Brownlee was determined for Jury to succeed, as his performance would reflect on her.

51. Despite her dedication and hard work, new employees would be told "you do not want to work in probation," by Defendant Zemke when being shown around the building.

52. Defendant Zemke would also refer to Ms. Brownlee as "the problem child."

53. This animosity spread throughout the court, as the clerks began to despise the probation department.

54. One such occurrence came during a guest speaker group exercise where Defendant Zemke stated in front of 30 employees and the judges that they should light a match and blow up the probation department.

55. On or about February 16, 2023, Jury requested the day off, stating he had a doctor's appointment that was going to take several hours.

56. Jury stated there were two days available for the appointment.

57. Ms. Brownlee looked at the docket for those days and informed him which day would work better given the workload presented to the probation department.

58. Jury ignored Ms. Brownlee, choosing the more inconvenient day and refusing to get a doctor's note for the appointment.

59. Ms. Brownlee explain that the Union may require one, since she would need him to come in for a little while prior to the appointment to help out.

60. In a meeting with Defendant McGrail, Jury was argumentative with Ms. Brownlee and Defendant McGrail took the opportunity to blame Ms. Brownlee for failing to properly let Jury know about the doctor's note requirements.

61. Ms. Brownlee pointed out that requirement is in the union contract and it is not her job to remind Jury about the required provisions of the CBA.

62. In the days that followed, Ms. Brownlee noticed a new tattoo that encompassed most of Jury's arm, suggesting there was no doctor's appointment at all.

63. Defendant McGrail refused to make Jury produce a note but did require Jennifer McTaggart to produce one.

64. On February 27, 2023, Defendant McGrail notified Ms. Brownlee that Jury had quit.

65. In March of 2023, Ms. Brownlee met with Defendant McGrail about streamlining the probation process and requesting a specific clerk position to speed the process along.

66. Defendant McGrail agreed with Ms. Brownlee's suggestions and stated Julie would be the clerk providing assistance.

67. Ms. Brownlee went on vacation on March 30, 2023 and received a text that the criminal department received 20 minutes of training and would be taking the files to "catch-up" probation.

68. However, the hasty training led to numerous errors and probationary processing issues.

69. On or about April 6, 2023, Defendant Debra Hernandez was overseeing the show cause docket and became antagonistic toward the criminal defendants appearing.

70. Hernandez stated "if you don't have any money to set up a payment plan, get out of the Zoom meeting and come back when you find some money to set up a payment plan."

71. This caused numerous criminal defendants to leave the Zoom and not reenter the show cause hearing, meaning that this statement caused multiple bench warrants to be issued.

72. This issue occurred multiple times, with Ms. Brownlee bringing it to Defendant McGrail's attention who dismissed it as a lie, despite Jaimie Connolly also being told about the same issue.

73. These issues continued to persist over the next few months.

74. On or about December 7, 2023, Ms. Brownlee texted Defendant McGrail to set up a call.

75. During the call, Ms. Brownlee discussed her medical insurance and FMLA paperwork, as she had suffered an injury outside of work that had caused a disability.

76. Defendant McGrail stated there was an issue with the paperwork and Ms. Brownlee would need to get a second opinion after he spoke with Tim Tomlinson, the court's attorney.

77. Later on December 7th, Defendant McGrail stated that a fitness for duty doctor had appointments the next day in Fraser.

78. Without Ms. Brownlee responding, Defendant McGrail scheduled an appointment for 2:30 pm on December 8th.

79. Ms. Brownlee tried to remedy the situation, as it caused numerous issues with her case manager who could not be available at the time Defendant McGrail set.

80. Defendant McGrail knew Ms. Brownlee had a case manager.

81. Ms. Brownlee felt pressured by Defendant McGrail and the doctor to attend immediately, despite her schedule and situation not being considered.

82. Upon information and belief, Defendant McGrail revealed her information to a Rachel Friday for a specific appointment.

83. Defendant McGrail and Rachel Friday are believed to be friends.

84. Defendant McGrail was trying to send Ms. Brownlee to an FNP, despite her original FMLA paperwork coming from Dr. David Weingarden.

85. In late 2023, Ms. Brownlee received an email and letter stating that she was unfit for work and that her job would be posted.

86. Ms. Brownlee attempted to fix the issue by contacting Defendant McGrail and included additional documentation to support her medical issues.

87. Upon information and belief, both Ms. Brownlee received a letter on January 30, 2024 regarding the payment of her PTO and CAT time totaling 397 hours.

88. Subsequently, Ms. Brownlee was prevented from using this accumulated time and was ultimately removed from her position.

89. Plaintiff performed her job duties competently and received positive evaluations.

90. As noted, Plaintiff was repeatedly undermined by Defendants Zemke and Hernandez, who disparaged her as a "problem child" and excluded her from decision-making.

91. Defendant Zemke further threatened to light a match" and "blow up probation" while siding with white staff against Plaintiff.

92. Defendant Lucido bypassed the interview process to promote a less-qualified white male over Plaintiff.

93. White probation officers engaged in misconduct, including falsifying records, without discipline, while Plaintiff was punished for minor infractions.

94. Plaintiff complained internally to Defendants Lucido, McGrail, Zemke, and Hernandez about race and gender discrimination.

95. Plaintiff also filed an EEOC charge.

96. Instead of addressing her concerns, Defendants escalated discipline, excluded her from responsibilities, and ultimately terminated her.

97. Plaintiff has a disability and requested reasonable accommodations, but her requests were denied.

98. Defendants retaliated against Plaintiff for requesting accommodations and opposing disability discrimination.

99. As a result of Defendants' actions, Plaintiff suffered lost wages, benefits, emotional distress, and other damages.

100.    Ms. Brownlee submitted a charge to the EEOC on July 16, 2024, Charge No. 471-2024-05175.

101.    A right to sue letter was issued on July 18, 2024, and her initial lawsuit followed.

102.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNTS

### Count I – Title VII Race Discrimination / Harassment
### (Against 41-B District Court)

103.     Plaintiff is African-American and a member of a protected class under

Title VII.

104.     Plaintiff was qualified for her position as a probation officer and

performed her duties competently.

105.     Despite her qualifications, Plaintiff was denied promotion

opportunities. For example, Defendant Lucido bypassed the interview

process to promote a less-qualified white male candidate over Plaintiff.

106.     Plaintiff was disciplined for minor or fabricated issues, while similarly

situated white employees who engaged in comparable or more serious

misconduct were not disciplined.

107.     Defendant Zemke undermined Plaintiff's authority by siding with

white staff against her, and both Zemke and Hernandez disparaged Plaintiff

as a "problem child."

108.     Plaintiff was subjected to a racially hostile environment, including

exclusion from meetings and decision-making, undermining of her work,

and threats such as Defendant Zemke's statement that he would "light a match" and "blow up probation."

109.    This harassment was severe and pervasive, altered the terms and conditions of Plaintiff's employment, and created an abusive working environment.

110.    Plaintiff was ultimately terminated because of her race and because she opposed racial discrimination.

111.    Defendant's conduct constitutes unlawful race discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## Count II – § 1983 Race Discrimination & Retaliation (Equal Protection) (Against Lucido, McGrail, Zemke, Hernandez – individual capacities)

112.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

113.    Plaintiff is African-American and thus a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment.

114.    Plaintiff was qualified for her position and consistently performed her duties as a probation officer competently.

16

115.    Defendants Lucido, McGrail, Zemke, and Hernandez, acting under color of state law, intentionally subjected Plaintiff to race-based discrimination and retaliation.

### Race Discrimination

116.    Defendant Lucido bypassed established hiring procedures and promoted a less-qualified white male candidate over Plaintiff, despite Plaintiff's stronger qualifications.

117.    Defendant Zemke repeatedly sided with white staff in disputes, undermined Plaintiff's authority in front of coworkers, and referred to Plaintiff as a "problem child."

118.    Defendant Hernandez excluded Plaintiff from team meetings and training opportunities that were provided to white employees.

119.    Defendant McGrail failed to investigate or remedy Plaintiff's complaints of race discrimination and instead allowed the hostile treatment to continue.

120.    Similarly situated white employees engaged in comparable or more serious misconduct but were not disciplined, while Plaintiff was singled out for harsher treatment and ultimately termination.

**Retaliation**

121.     Plaintiff complained internally to Lucido, McGrail, Zemke, and

Hernandez about race discrimination.

122.     Shortly after Plaintiff engaged in this protected activity, Defendants

escalated discipline against her, removed her from decision-making roles,

and ultimately terminated her employment.

123.     The timing of these actions, combined with the disparate treatment of

employees who did not complain of discrimination, demonstrates that

Defendants' actions were retaliatory.

**Constitutional Violation**

124.     Defendants' conduct was intentional, arbitrary, and motivated by

racial animus and retaliatory intent.

125.     Their actions deprived Plaintiff of her clearly established

constitutional right under the Equal Protection Clause to be free from race

discrimination and retaliation in public employment.

126.     Defendants are liable in their individual capacities under 42 U.S.C. §

1983.

18

## Count III – § 1983 Hostile Work Environment (Race & Gender)
## (Against Lucido, McGrail, Zemke, Hernandez – individual capacities)

127.    Plaintiff re-alleges and incorporates the preceding paragraphs as if
fully set forth herein.

128.    Plaintiff is African-American and female, and thus a member of two
protected classes under the Equal Protection Clause of the Fourteenth
Amendment.

129.    Plaintiff was qualified for her position and consistently performed her
duties as a probation officer competently.

130.    While acting under color of state law, Defendants Lucido, McGrail,
Zemke, and Hernandez created, condoned, or failed to prevent a racially and
sexually hostile work environment.

### Unwelcome Harassment

131.    Plaintiff was disparaged as a "problem child" by Defendants Zemke
and Hernandez, which undermined her credibility with coworkers and
subordinates.

132.    Plaintiff was excluded from meetings and training opportunities, depriving her of advancement opportunities that were offered to white and male employees.

133.    Defendant Zemke made threatening remarks about "lighting a match and blowing up probation" in Plaintiff's presence, escalating the atmosphere of hostility.

134.    Defendant Lucido disregarded Plaintiff's qualifications and bypassed her for promotion in favor of a less-qualified white male, reinforcing the discriminatory culture.

## Based on Race and Gender

135.    These comments, exclusions, and denials of opportunity were directed at Plaintiff because she is both African-American and female.

136.    White employees and male employees were not subjected to comparable treatment.

## Severe or Pervasive Conduct

137.    The harassment was not isolated; it was severe and pervasive, occurring repeatedly over time, and materially altered the conditions of Plaintiff's employment.

138.    Plaintiff was forced to work in an environment where her authority was undermined, her competence questioned, and her contributions disregarded because of her race and gender.

**Deliberate Indifference**

139.    Defendant McGrail, as Court Administrator, failed to address Plaintiff's repeated complaints of discrimination and harassment, allowing the hostile environment to persist.

140.    Defendants Lucido, Zemke, and Hernandez either actively engaged in or condoned the hostile conduct.

**Constitutional Violation**

141.    Defendants' conduct deprived Plaintiff of her clearly established right under the Equal Protection Clause to be free from a hostile work environment based on race and gender.

142.    Defendants are liable in their individual capacities under 42 U.S.C. § 1983.

**Count IV – Title VII Retaliation**
**(Against 41-B District Court)**

143.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

144.     Plaintiff engaged in protected activity by:

    a.  Complaining internally to Defendants Lucido, McGrail, Zemke, and Hernandez about race and gender discrimination; and

    b.  Filing a charge of discrimination with the Equal Employment Opportunity Commission.

145.     Defendant 41-B District Court and its supervisory officials were aware of Plaintiff's protected activity.

146.     Following her protected activity, Plaintiff was subjected to escalating discipline for minor or fabricated infractions, exclusion from meetings and decision-making, and derogatory remarks questioning her competence.

147.     Defendant further retaliated by promoting less-qualified white male employees over Plaintiff and ultimately terminating her employment.

148.     The temporal proximity between Plaintiff's protected activity and the adverse actions, combined with the disparate treatment compared to employees who did not engage in such activity, demonstrates a causal connection.

149.     Defendant's conduct constitutes unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

22

## Count V – Rehabilitation Act Retaliation
## (Against 41-B District Court)

150.     Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

151.     Plaintiff is an individual with a disability within the meaning of the

Rehabilitation Act of 1973, 29 U.S.C. § 794.

152.     Plaintiff was qualified to perform the essential functions of her

position as a probation officer with or without reasonable accommodations.

**Protected Activity**

153.     Plaintiff engaged in protected activity when she requested reasonable

accommodations for her disability, including adjustments to her work

assignments.

154.     Plaintiff also opposed disability discrimination by reporting to

supervisors that she was being denied accommodations and treated unfairly

compared to non-disabled employees.

**Knowledge**

155.     Defendant 41-B District Court and its administrators, including

Lucido, McGrail, Zemke, and Hernandez, were aware of Plaintiff's

disability and her accommodation requests.

**Adverse Actions**

156.     After Plaintiff engaged in this protected activity, Defendant escalated

disciplinary actions against her for minor or pretextual issues.

157.     Plaintiff was excluded from meetings, stripped of meaningful

responsibilities, and disparaged by supervisors in front of colleagues.

158.     Ultimately, Defendant terminated Plaintiff's employment.

**Causal Connection**

159.     The timing of these adverse actions, following closely after Plaintiff's

accommodation requests and complaints, together with the disparate

treatment of employees who did not request accommodations, shows a

causal connection between Plaintiff's protected activity and Defendant's

retaliation.

**Violation**

160.     By retaliating against Plaintiff for engaging in protected activity,

Defendant 41-B District Court violated § 504 of the Rehabilitation Act.

**Count VI – Rehabilitation Act Disability Discrimination / Harassment /
Failure to Accommodate**

**(Against 41-B District Court)**

161.     Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

24

162.    Plaintiff is an individual with a disability within the meaning of the

Rehabilitation Act, 29 U.S.C. § 794.

163.    Plaintiff was qualified to perform the essential functions of her

probation officer position with or without reasonable accommodations.

### Failure to Accommodate

164.    Plaintiff requested reasonable accommodations for her disability,

including modifications to her work assignments and scheduling.

165.    Defendant 41-B District Court was aware of Plaintiff's disability and

her accommodation requests.

166.    Instead of engaging in an interactive process, Defendant denied

Plaintiff's requests outright and failed to provide accommodations that

would have enabled her to continue performing her job effectively.

### Disparate Treatment / Discrimination

167.    Defendant treated Plaintiff less favorably than non-disabled

employees.

168.    While non-disabled probation officers were given flexibility and

support in handling assignments, Plaintiff was subjected to stricter scrutiny

and discipline.

169.     Defendant Lucido promoted less-qualified, non-disabled candidates over Plaintiff.

170.     Defendant Hernandez excluded Plaintiff from meetings and training opportunities, further disadvantaging her compared to non-disabled employees.

### Harassment

171.     Plaintiff was disparaged as a "problem child" by Defendants Zemke and Hernandez, comments that were made in connection with her requests for accommodation and her perceived limitations.

172.     Defendant Zemke further threatened to "light a match" and "blow up probation," creating an atmosphere of hostility that targeted Plaintiff as the source of departmental conflict.

173.     These repeated comments and exclusions created a hostile work environment based on Plaintiff's disability.

### Termination

174.     Ultimately, Defendant terminated Plaintiff because of her disability and her accommodation requests.

175.     Non-disabled employees were not subjected to comparable treatment

or termination for similar conduct.

**Violation**

176.     Defendant's failure to accommodate Plaintiff, disparate treatment of

Plaintiff as compared to non-disabled employees, and harassment because of

her disability constitute unlawful disability discrimination under § 504 of the

Rehabilitation Act.

## Count VII – Title VII Gender/Sex Discrimination / Harassment
## (Against 41-B District Court)

177.     Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

178.     Plaintiff is female and a member of a class protected under Title VII.

179.     Plaintiff was qualified for her probation officer position and

performed her duties competently.

180.     Despite her qualifications, Plaintiff was repeatedly denied promotions

and advancement opportunities. Defendant Lucido promoted a less-qualified

male candidate over Plaintiff, bypassing the interview process altogether.

181.    Plaintiff was excluded from meetings, training, and decision-making roles by Defendants Zemke and Hernandez, while male probation officers were included.

182.    Plaintiff was disparaged by supervisors as a "problem child," undermining her authority and credibility with colleagues.

183.    Male employees who engaged in comparable or worse conduct were not disciplined, while Plaintiff was subjected to heightened scrutiny and eventual termination.

184.    Plaintiff's treatment constituted unwelcome harassment based on her sex.

185.    This harassment was severe and pervasive, altered the conditions of her employment, and created a hostile work environment.

186.    Defendant's conduct constitutes unlawful gender discrimination and harassment in violation of Title VII, 42 U.S.C. § 2000e-2(a).

### Count VIII – ELCRA Race Discrimination / Harassment
### (Against 41-B District Court, Lucido, McGrail, Zemke, Hernandez – individual capacities)

187.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

188.     Plaintiff is African-American and a member of a class protected under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 et seq.

189.     Plaintiff was qualified for her position as a probation officer and consistently met the requirements of her role.

190.     Defendants intentionally treated Plaintiff less favorably than similarly situated white probation officers.

191.     Defendant Lucido promoted a less-qualified white male candidate over Plaintiff, despite Plaintiff's stronger credentials.

192.     Defendant Zemke undermined Plaintiff's authority in front of coworkers and openly sided with white staff against her.

193.     Defendant Hernandez excluded Plaintiff from meetings and training opportunities made available to white employees.

194.     White employees engaged in misconduct but were not disciplined, while Plaintiff was disciplined for minor or fabricated issues.

195.     Plaintiff was subjected to unwelcome harassment, including being called a "problem child" and threatened by Defendant Zemke's remark that he would "light a match and "blow up probation."

196.     The harassment was severe and pervasive, altered the terms of Plaintiff's employment, and created a racially hostile environment.

197.      Defendants' conduct constitutes unlawful race discrimination and

harassment in violation of ELCRA.

## Count IX – ELCRA Retaliation

### (Against 41-B District Court, Lucido, McGrail, Zemke, Hernandez – individual capacities)

198.      Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

199.      Plaintiff engaged in protected activity under the Elliott-Larsen Civil

Rights Act (ELCRA), MCL 37.2101 et seq., by complaining internally to

Defendants Lucido, McGrail, Zemke, and Hernandez about race and gender

discrimination.

200.      Defendants knew of Plaintiff's protected activity because she talked to

them directly.

201.      After Plaintiff engaged in this activity, Defendants escalated discipline

against her for minor or fabricated infractions, excluded her from meetings

and case assignments, and disparaged her as a "problem child."

202.      Defendant Lucido promoted a less-qualified white male over Plaintiff

following her discrimination complaints.

203.      Ultimately, Plaintiff was terminated in retaliation in part for exercising

her rights under ELCRA.

204.    Defendants' conduct constitutes unlawful retaliation in violation of

ELCRA.

### Count X – ELCRA Gender/Sex Discrimination / Harassment
### (Against 41-B District Court, Lucido, McGrail, Zemke, Hernandez – individual capacities)

205.    Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

206.    Plaintiff is female and a member of a class protected under ELCRA.

207.    Plaintiff was qualified for her position as a probation officer.

208.    Despite her qualifications, Plaintiff was denied promotions and

training opportunities, while male employees with less experience or

qualifications were advanced.

209.    Defendant Lucido bypassed Plaintiff in favor of a less-qualified male

candidate for promotion.

210.    Plaintiff was subjected to unwelcome gender-based harassment,

including being excluded from meetings, undermined in front of coworkers,

and disparaged as a "problem child" by supervisors.

211.    Male employees were not subjected to similar treatment.

212.    This harassment was severe and pervasive, altered the conditions of

Plaintiff's employment, and created a hostile work environment.

213.     Defendants' conduct constitutes unlawful gender discrimination and

harassment in violation of ELCRA.

**Count XI – PWDCRA Disability Discrimination / Harassment / Failure to Accommodate**

**(Against 41-B District Court, Lucido, McGrail, Zemke, Hernandez – individual capacities)**

214.     Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

215.     Plaintiff is an individual with a disability as defined by the Michigan

Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 et seq.

216.     Plaintiff was qualified to perform the essential functions of her

position with or without reasonable accommodations.

217.     Plaintiff requested reasonable accommodations, including adjustments

to her work assignments.

218.     Defendants knew of Plaintiff's disability and accommodation requests

but denied them and failed to engage in the interactive process.

219.     Instead, Defendants disciplined Plaintiff for issues related to her

disability, excluded her from meetings and assignments, and subjected her to

disparagement and threats.

220.    Defendant Zemke's statement about "lighting a match and blowing up

probation" and repeated references to Plaintiff as a "problem child"

contributed to a hostile work environment targeting her disability.

221.    Defendants treated non-disabled employees more favorably and did

not subject them to comparable discipline or harassment.

222.    Plaintiff was ultimately terminated because of her disability and

accommodation requests.

223.    Defendants' conduct constitutes disability discrimination, harassment,

and failure to accommodate in violation of the PWDCRA.

### Count XII – PWDCRA Retaliation

### (Against 41-B District Court, Lucido, McGrail, Zemke, Hernandez – individual capacities)

224.    Plaintiff re-alleges and incorporates the preceding paragraphs as if

fully set forth herein.

225.    Plaintiff engaged in protected activity under the PWDCRA by

requesting accommodations for her disability and by opposing disability-

based discrimination.

226.    Defendants knew of Plaintiff's protected activity because she told

them directly.

33

227.    After Plaintiff engaged in this activity, Defendants escalated discipline against her, excluded her from case assignments and meetings, and increased their disparaging comments.

228.    Defendants denied Plaintiff's requested accommodations and ultimately terminated her employment.

229.    The timing and pattern of adverse actions, compared to employees who did not request accommodations, demonstrate a causal connection between Plaintiff's protected activity and Defendants' retaliation.

## <u>RELIEF REQUESTED</u>

Plaintiff respectfully requests that this Court:

A. Enter judgment in her favor and against Defendants;

B. Award back pay, front pay, and lost benefits;

C. Award compensatory damages for emotional distress and humiliation;

D. Award punitive damages against the individual defendants where permitted;

E. Order reinstatement or front pay;

F. Award attorney's fees and costs; and

G. Grant such other relief as this Court deems just.

Dated: September 23, 2025                    Respectfully Submitted,

                                             /s/ Carla D. Aikens
                                             Carla D. Aikens (P69530)
                                             CARLA D. AIKENS, P.L.C.
                                             *Attorneys for Plaintiff*
                                             615 Griswold Street, Ste. 709
                                             Detroit, MI 48226
                                             carla@aikenslawfirm.com

35